# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HARRIS EUGENE URDA, ET AL.**

**VERSUS**

**VALMONT INDUSTRIES INC., ET AL.**

**CIVIL ACTION**

**NO. 18-1044-JWD-SDJ**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 108) filed by Third-Party Defendant, Aldridge Electric, Inc. ("Aldridge"). Third-Party Plaintiff, American Piledriving Equipment, Inc. ("APE") opposes the motion. (Doc. 112.) Aldridge filed a reply. (Doc. 115.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Aldridge's motion is granted.

## I.    Relevant Background

### A.  Overview

Plaintiffs Harris Eugene Urda ("Harris") and Rachel Urda ("Rachel") (collectively, "Plaintiffs") seek damages for injuries sustained by Harris on January 4, 2018, at a construction site in Plaquemine, Louisiana. (Aldridge's *Statement of Material Facts* ("*SMF*") ¶ 1, Doc. 108-3; *American Piledriving Equipment, Inc.'s Statement of Disputed Material Facts* ("*SDMF*") ¶ 1, Doc. 112-1.) Plaintiff Harris was working on a pole installation project when the crane he was operating was struck by a falling utility power pole. (Doc. 75, ¶ 9.) Specifically, a vibratory hammer which was attached to the "drive ears" of a utility pole reportedly detached as the pole was being driven into the ground, causing the pole to fall and strike the crane operated by Harris. (*Id.*)

At the time of the accident, Harris was acting in the course and scope of his employment with Aldridge. (*SMF* ¶ 2; *SDMF* ¶ 2.) As a result of the accident, Plaintiffs brought suit against APE; Valmont Industries, Inc.; and New South Access & Environmental Solutions, LLC ("New South"). (Doc. 1, ¶¶ 3–5, 15.) Plaintiffs assert that APE failed to "provide an appropriate hammer and/or to warn of the propensity of the ears to fall from the hammer[.]" (Doc. 75, ¶ 10.)

On March 6, 2019, APE filed a Third-Party Complaint against Aldridge pursuant to Fed. R. Civ. P. 14(a), wherein APE asserts that it and Aldridge were parties to a Rental Agreement in connection with Aldridge's rental of a vibratory hammer from APE for use at Aldridge's construction site. (Doc. 37.)

APE alleges that, under the terms of that agreement, Aldridge assumed responsibility for all risks and damages arising from the use of the vibratory hammer, and for its maintenance and inspection. (Doc. 37, ¶¶ 10–11.) APE also alleges that Aldridge failed to adhere to the safety instructions in the "Operation/Maintenance Manual" provided with the equipment, which APE contends caused the accident and Harris's injuries. (*Id.* ¶¶ 14–17.)

### B. Factual Background

On May 3, 2017, APE and Aldridge entered into a rental agreement by which Aldridge rented a J&M Vibro vibratory hammer, Serial Number J20140601R (hereinafter "Vibratory Hammer 1") from APE. (Doc. 112-2 at 46.) The Rental Agreement contains two provisions of particular note: (1) a choice-of-law provision requiring the application of Washington law; and (2) a provision which requires Aldridge to indemnify, defend, and name APE as an additional insured on its insurance policy. (Doc. 112-2 at 50.) The Rental Agreement was signed by Aldridge. (Doc. 112-2 at 46.)

Sometime after the May 3, 2017 Rental Agreement was signed, Aldridge informed APE that Vibratory Hammer 1 was malfunctioning. APE agreed to exchange Vibratory Hammer 1 for another vibratory hammer, a 200-6T3 Vibro, serial number 20091144T (hereinafter "Vibratory Hammer 2"). A new document titled "Rental Agreement" was issued for the new equipment, but was not signed by Aldridge. (Doc. 37-3 at 1.) It contained the same terms and conditions as the first rental agreement. (Doc. 37-3 at 2.)

On January 4, 2018, Plaintiff Harris allegedly sustained injuries due to an accident caused by the malfunctioning of Vibratory Hammer 2. (*SMF* ¶ 1; *SDMF* ¶ 1.) APE claims that Aldridge owes it defense and indemnification against Plaintiffs' claims, and damages for breach of contract due to Aldridge's alleged failure to name APE as an additional insured under Aldridge's general liability insurance policy. (Doc. 37, ¶¶ 19–33.) Aldridge contends that APE's third-party claim against it should be dismissed because the rental agreement covering the equipment at issue was unsigned; thus, any provision requiring Aldridge to indemnify, defend, and provide additional insurance contained therein is unenforceable. (*See* Doc. 108-4.)

### C.  The Rental Agreement

The first page of the Rental Agreement lists the equipment provided to Aldridge by APE for the pole installation project, including the involved vibratory hammer, and reflects the daily, weekly, and monthly rental rates for each piece of equipment. (Doc. 37-3 at 1.) The second page of the Rental Agreement provides:

> 13. INDEMNIFICATION: The Customer hereby agrees to defend, indemnify and hold APE harmless from any claims, complaints, lawsuits, arbitration litigation, damages, losses, expenses, penalties, fines, liabilities, or obligations of any kind which relates to, arises out of, or is alleged to relate to or arise out of the Equipment, the use of the Equipment, the condition of the Equipment, any failure or alleged failure to warn, or any other matter that is in any way related directly or indirectly to this Agreement.

14. INSURANCE: The Customer agrees to maintain insurance which covers all liability arising from its business operations and any damage to the Equipment. The Customer's liability insurance shall have limits of at least $2,000,000 per occurrence and shall cover any liability for, injuries to individuals, and the Customer's defense and indemnity obligations under Section 12. The Customer's insurance covering any property damage to the Equipment shall be for replacement cost of the Equipment and no less than the value set forth on the front of this Agreement, APE, shall be named as an additional insured on the Customer's insurance policies. The Customer shall provide proof that it has obtained insurance that meets its obligations under this Section 13. The Customer waives all rights of subrogation that an insurer might have against APE under any such insurance policy unless such waiver voids the Customer's insurance.

19. GOVERNING LAW; VENUE; ATTORNEYS' FEES: This Agreement shall be governed by and interpreted in accordance with the laws of the State of Washington, without regard or reference to its conflict of laws provisions, or those of any other jurisdiction that would result in the application of anything other than Washington Law to this Agreement. The Customer agrees that at the sole and exclusive option of APE, the venue of any lawsuit to enforce or interpret this Agreement may be laid in King County, Washington; Middlesex County, New Jersey; Polk County, Florida; San Joaquin County, California; Ascension County, Louisiana; Montgomery County, Texas; St Clair County Missouri or No. Hampton County, Virginia and regardless of the county in which any lawsuit is commenced by APE, the customer waives the right to move for a change of venue. If APE retains an attorney after a default by the Customer, regardless of whether suit is commenced, the Customer shall pay APE's reasonable attorney's fees, costs and/or collection fees. The Customer shall also reimburse APE on demand for the amount of all expenses incurred by APE in locating and recovering possession of the Equipment.

(Doc. 37-3 at 2.)

## II.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III.   Discussion

#### A.  Parties' Arguments

##### 1. Aldridge's Original Memorandum (Doc. 108-4)

Aldridge contends that it is entitled to summary judgment for two reasons.  First, Aldridge argues that the exchange of the equipment involved a second and separate rental agreement. (Doc. 108-4 at 7.) As the second rental agreement was unsigned, Aldridge contends it cannot be held to the terms of the contract or the indemnity agreement contained therein. Specifically, relying upon *Russell v. City of New Orleans*, 98-0927 (La. App. 4 Cir. 2/24/99), 732 So. 2d 66, Aldridge asserts that because it is an oral lease, the parties are "bound by the general terms of a lease only, i.e., the thing, the price, and the term, but not by an onerous provision such as an indemnity clause." (*Id.* at 7 (citing *Russell*, 732 So. 2d at 70).) Thus, the onerous provisions that APE is seeking to impose—related to the duty to defend, indemnify, and obtain additional insurance—are invalid and unenforceable. (*Id.* at 8.)

Second, and alternatively, these additional provisions are unenforceable because Aldridge did not waive its workers' compensation immunity under Washington and/or Louisiana law. (*Id.* at 10.) Aldridge argues Washington law should apply since there is no conflict between Louisiana and Washington law on this point. (*Id.*)

Aldridge then details that Washington law allows an employer to waive its tort immunity, but there is a "high bar" to overcome to effectively do so. (*Id.* at 12.) Aldridge represents that Washington law permits an employer to waive its immunity only through a mutually negotiated "third-party indemnification agreement" in which there is a "clear and specific waiver … found from (1) express language to the effect that the employer has waived the immunity granted to it under the workers compensation act, … or (2) a provision specifically stating that the [employer] assumes potential liability for actions brought by its own employees." (*Id.* (citing *Crop Prod. Servs., Inc. v. Narum Concrete Constr., Inc.*, 2013 WL 4759085, at *4 (E.D. Wash. Sept. 4, 2003); *Brown v. Prime Constr. Co., Inc.*, 684 P.2d 73 (Wash. 1984); RCW 4.24.115(1)(b); *Calkins v. Lorain Div. of Koehring Co.*, 613 P. 2d 143, 145 (Wash. 1980)).)

And here, the unsigned rental agreement does not show that Aldridge clearly intended to waive its statutory tort immunity under Washington's workers compensation law. (*Id.* at 13.) According to Aldridge, APE's representative admitted that the parties never discussed any of the provisions at issue in the unsigned agreement; Aldridge's representative asserted that Aldridge would not have agreed to defend and indemnify APE for its own negligence, even if Aldridge had signed the agreement. (*Id.*) As such, the terms in the second, unsigned agreement were not mutually negotiated, and Aldridge did not waive its immunity under Washington law. (*Id.*)

Likewise, Louisiana law allows an employer to waive its immunity through an indemnification agreement with potential third-party tortfeasors, but an "employer must do so

intentionally and knowingly, *i.e.*, through an intentional relinquishment of a known right, power or privilege." (*Id.* at 10 (citing *Ledet v. Jo-De Equip. Rental Co., Inc.*, 2009-1267 (La. App. 3 Cir. 4/7/10), 34 So. 3d 1028, 1032).) However, Aldridge again contends that the parties in this case never discussed or negotiated the additional terms in the unsigned agreement. (*Id.* at 11-12.) Therefore, Aldridge did not waive its statutory tort immunity under Louisiana law. (*Id.* at 12.)

### 2. APE's Opposition (Doc. 112)

In opposition, APE contends that Aldridge's motion should be denied for the following three reasons:

> 1. The exchanged Vibratory Hammer being operated at the time of the incident is subject to the terms of the signed Rental Agreement for the original Vibratory Hammer that had to be swapped out due to unrelated mechanical issues;
>
> 2. Aldridge admits that the incident was the result of its own negligence and that APE bears no fault for the incident; and
>
> 3. The exclusive remedy provision of the worker's compensation laws, which regulate liability between Aldridge and the plaintiff, Harris Urda, do not strip APE, a stranger to the employment relationship of Aldridge and Mr. Urda, of its contracted-for right to defense and indemnity from Aldridge.

(Doc. 112 at 1-2.)

As to the first reason, APE argues that the swapping out of the equipment did not invalidate the terms of the original rental agreement. (*Id.* at 2.) Rather than treating the two documents as two separate rental agreements, APE urges the Court to treat them as part of one contract. (*Id.*) Under this theory, the second rental agreement was a written modification to the original rental agreement. (*Id.*) APE further contends that Aldridge's reliance on *Russell* is misplaced as the parties in that case had not entered into any written lease agreement, whereas here, the original agreement is signed. (*Id.* at 2 (citing *Russell*, 732 So. 2d at 67).)

Additionally, the court in *Pierre v. NES Rentals*, rejected Aldridge's exact argument. (*Id*. at 4 (citing *Pierre v. NES Rentals,* 2007 WL 9700914 (M.D. La. 3/27/07)).) According to APE, in that case, the court found that the second unsigned rental agreement was a modification of the original, signed contract, and therefore the indemnity clause contained therein was binding. (*Id*.) "The fact that the modification itself was not also signed is inconsequential." (*Id*. (citing *Pierre,* at *3).) Likewise, to the extent that there was an oral agreement regarding the equipment that was exchanged here, it is a "mere modification" of the signed rental agreement. (*Id*. at 8.) As a result, Vibratory Hammer 2 is subject to the terms of the original, signed rental agreement and the provisions at issue remain binding. (*Id*. at 7-8.)

APE next contends that the rental agreement is governed by the laws of the State of Washington. (*Id*. at 8.) And under Washington state law, APE asserts there is "no question" that it is entitled to defense and indemnity based on the contractual language. (*Id*. at 12.) APE relies on general contract interpretation principles to support this argument. (*Id*. at 8-9.)

Again, the provision at issue requires Aldridge to:

> defend, indemnify and hold APE harmless from *any* claims, complaints, lawsuits, arbitration litigation, damages, losses, expenses, penalties, fines, liabilities, or obligations of any kind *which relates to, arises out of, or is alleged to relate to or arise out of the Equipment, the use of the Equipment, the condition of the Equipment, any failure or alleged failure to warn,* or any other matter that is in any way related directly or indirectly to this Agreement.

(*Id*. at 9 (citing Section 13 of Rental Agreement).) APE reasons that because Plaintiffs' claims "undoubtedly" relate to and arise out "of the use/condition of the equipment and/or the alleged failure to warn, APE is clearly entitled to defense and indemnity from Aldridge." (*Id*.)

Alternatively, there are genuine issues of material fact regarding APE's own negligence, mandating the denial of Aldridge's motion. (*Id*. at 9-12 (citing Aldridge's Rule 30(b)(6) Dep.,

Initial Incident Report, and Final Incident Report, all which state that Aldridge was at fault for Plaintiff Harris's accident).)

Finally, Aldridge's tort immunity arising from claims asserted against it by its own employees does not vitiate its contractual obligations to APE under Louisiana law. (*Id*. at 13.) As such, Aldridge cannot relinquish its obligations to indemnify, defend, and provide additional insurance "solely because the third party who made the claim against [APE] happens to be [Aldridge's] employee." (*Id*. at 14 (numerous citations omitted).)

### 3. Aldridge's Reply (Doc. 115)

In reply, Aldridge maintains that it has no contractual obligation to defend and indemnify APE, nor to have APE named as an additional insured on its insurance policy for the same reasons originally urged. Again, the unsigned rental agreement is not valid as to form under Louisiana law, and thus the onerous provisions at issue cannot be enforced. (Doc. 115 at 2.)

Additionally, *Pierre* is distinguishable based on (1) the fact that the original contract in *Pierre* "expressly stated that it could be amended in writing" and (2) that the second contract in *Pierre "*explicitly stated that the original forklift, rented under a previous agreement signed by the lessee, was being exchanged for the second forklift." (*Id*. at 2-3.) Here, however, the second, unsigned rental agreement does not state that Vibratory Hammer 1 was being substituted for Vibratory Hammer 2, nor does the first rental agreement state that it could be modified in writing. (*Id*. at 3.) To the contrary, both agreements state that "This Agreement expresses the full and final contract and agreement between the parties hereto, and there are no other agreements." (*Id*.)

Aldridge then reiterates that even if there is a valid contract, it did not waive its workers' compensation immunity. (*Id*. at 4.) Applying Washington law, Aldridge argues that it did not "clearly and specifically" waive its statutory employer immunity because the contract language is

too broad. (*Id.*) In support, Aldridge relies on cases where similar contractual language did not constitute an effective waiver of an employer's workers' compensation immunity. (*Id.* at 4-5 (citing *Riggins v. Bechtel Power Corp.*, 722 P.2d 819, 825 (Wash. Ct. App. 1986); *Waters v. Puget Sound & Light Co.*, 924 P.2d 925, 926 (Wash. Ct. App. 1996); *Hatch v. City of Algona*, 167 P.3d 1175, 1180 (Wash. Ct. App. 2007)).) Aldridge continues:

> Nor is APE able to show that it should be named as an additional insured under Aldridge's policy in the context of this case, as the relevant portion of § 14 of the unsigned rental agreement only requires that APE be covered for personal injuries described in § 13. *See* R. Doc. 37-2, § 14 (which incorrectly points to "defense and indemnity obligations under Section 12", related to patents on APE's equipment, rather than § 13). But as discussed above, Aldridge is not obligated to defend and indemnify APE under § 13 of the unsigned rental agreement, and thus the additional insured provision cannot apply here.

(*Id.* at 6.) Accordingly, under Washington statutory law and jurisprudence, this Court should grant summary judgment in Aldridge's favor.

Further, Aldridge did not intentionally waive its immunity under Louisiana law either. Again, the unsigned rental agreement is "merely evidence of an oral lease of equipment which … cannot include additional terms and conditions such as obligations to defend and indemnify or name a third party as an additional insured." (*Id.* at 7.) But even considering the additional terms and conditions in the second agreement, the language is "ambiguous in that [it is] susceptible of more than one reasonable interpretation." (*Id.*) This is so because the agreement does not specify that Aldridge will defend and indemnify APE or any other party. (*Id.* at 8.) Thus, it is necessary to consider extrinsic evidence to determine the intent of the parties. (*Id.* at 7.) And, APE has presented no evidence that Aldridge "knowingly waived [its] tort immunity." (*Id.* at 9.)

Moreover, the cases that APE relies on are "easily distinguishable" in that in those cases the courts either applied an entirely different statute (La. R.S. 9:3221) or applied substantive law of a different state (California). (*Id.* at 7.)

## IV.    Discussion

Aldridge moves the Court to grant summary judgment in its favor and enter an order that Aldridge owes no duty to defend or indemnify Defendant APE in the underlying lawsuit or to name APE as an additional insured on its insurance policy. Again, Aldridge asserts that: (1) the agreement between APE and Aldridge is only an oral lease to which the onerous provisions in question do not form part of the contract; and (2) even if there is a valid contract containing the provisions at issue, Aldridge did not waive its workers' compensation immunity under Washington law (and Louisiana law in the alternative). The Court addresses each of these issues in turn.

### A.  Valid Contract

#### 1. Applicable Law: Louisiana

As a preliminary matter, the Court must first determine whether a valid and enforceable agreement exists, by application of Louisiana law, before it can enforce the choice-of-law provision in the rental agreement, and apply Washington law. *See Amirmotazedi v. Viacom, Inc.*, 768 F. Supp. 2d 256, 261 n.2 (D.D.C. 2011) ("[I]n cases such as this where one party is alleging that no contract was formed, it would be premature to enforce the choice of law provision before deciding whether an agreement exists."); *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." (citing *Trans–Tec Asia v. M/V Harmony Container,* 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."))); *B–S Steel of Kansas, Inc. v. Texas Indus., Inc.,* 439 F.3d 653, 661 n.9 (10th Cir. 2006) (referring to "the

logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid").

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) (citation omitted); *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). But "[q]uestions of formation and validity logically come before questions regarding construction and interpretation." *Bluebonnet Hotel Ventures, LLC v. Wachovia Bank, N.A.*, 2011 WL 13074300, at *3 (M.D. La. Sept. 29, 2011). Thus, regardless of whether a contract specifies that it will be interpreted according to the laws of a particular state, if, as here, the contract is silent as to what law governs the issues of formation and validity and the "overwhelming facts as alleged in the complaint occur in Louisiana and affect the laws of Louisiana … Louisiana law must apply to matters regarding vices of consent which affect the contract's validity." *Bluebonnet*, 2011 WL 13074300, at *4.

The facts alleged in Plaintiffs' Complaint and in APE's Third-Party Demand overwhelmingly occurred in Louisiana—the delivery of the equipment, Aldridge's use of the equipment, and the accident—and affect the laws of Louisiana. Thus, Louisiana contract law applies to the issue of whether the first signed agreement as to Vibratory Hammer 1 or the second, unsigned rental agreement, including defense and indemnity and additional insured status, are contracts enforceable against Aldridge. *See Russell v. City of New Orleans, Dep't of Prop. Mgmt.*, 98-0927 (La. App. 4 Cir. 2/24/99), 732 So. 2d 66, 70, *writ denied*, 99-1563 (La. 10/8/99), 750 So. 2d 968 ("The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity.") (citation omitted).

## 2. Analysis

Again, Aldridge argues that the onerous provisions at issue (to indemnify, defend, and procure additional insurance) in the second, unsigned rental agreement are unenforceable against Aldridge under Louisiana law.  (Doc. 108-4 at 7-9.)  Specifically, Aldridge asserts that because it is only an oral lease, the parties are "bound by the general terms of a lease only, i.e., the thing, the price, and the term, but not by an onerous provision such as an indemnity clause." (*Id.* at 7.) In support, Aldridge relies heavily upon *Russell v. City of New Orleans*, 732 So. 2d 66.

In that case, a Louisiana appellate court held that an unsigned indemnity contract was not binding. *Id.* at 69. In *Russell*, the City of New Orleans filed a third-party demand against the Orleans Parish School Board seeking indemnification for damages sustained by the plaintiff in an accident in the Municipal Auditorium. *Id.* at 67. The School Board had a history of entering into agreements with the City to lease the Municipal Auditorium for high school graduation ceremonies each year. In 1988, due to an oversight the lease was never returned to the City and remained unsigned. *Id.* at 67-68. However, in *Pierre*, this Court declined to follow the reasoning of the Louisiana Fourth Circuit Court of Appeal in *Russell*. *Pierre v. NES Rentals*, 2007 WL 9700914, at *3 (M.D. La. Mar. 27, 2007) (Brady, J.). In *Pierre*, the lessor of a forklift involved in the underlying accident asserted a third-party demand against the lessee, who was the injured party's employer, for defense and indemnity under an unsigned written rental agreement. *Id*. at *1-2.

*Pierre* distinguished *Russell* and found as follows:

> Although *Russell* involved a dispute over an indemnity provision in an unsigned rental agreement, the factual similarities between the two cases do not extend much further. In *Russell*, each year the City of New Orleans entered into a new contract to rent various locations for high school graduations. The City offered leases from prior years into evidence to show the history between the parties and to show that the failure to sign and return the lease at issue was a mere oversight. The Louisiana Fourth Circuit Court of Appeal was not persuaded by the City's arguments. It

concluded that the indemnity provision was an onerous provision that could not be binding when the rental agreement was unsigned.

In this case, however, NES is not relying upon past contracts wholly unrelated to the claim. Instead, NES argues and this court finds that the original rental agreement should be considered with the second rental agreement as part of one contract. As the second rental agreement was a modification of the original, signed contract, the indemnity clause contained therein is binding. The fact that the modification itself was not also signed is inconsequential.

*Id.* at *3.

The same is true here. As such, this Court finds that the original rental agreement should be considered with the second rental agreement as part of one contract. Because the second rental agreement was a modification of the original, signed contract, the indemnity clause and other provisions contained therein are binding.

Nevertheless, Aldridge's attempts to distinguish *Pierre* based on (1) the fact that the original contract in *Pierre* stated that it could be altered in writing and (2) that the second contract in *Pierre* expressly provided that forklift #1 was being exchanged for forklift #2. (Doc. 115 at 2-3.) However, these arguments fail.

First, a written contract can be orally modified at any time, regardless of whether the written contract provides that it can only be amended in writing. *Schindler Elevator Corp. v. Long Prop. Holdings, LLC,* 50,199 (La. App. 2 Cir. 11/18/15), 182 So. 3d 233, 241 ("[A] contract that is not required by law to be in writing may be modified by a subsequent oral agreement, and parol evidence is admissible to prove the modification. Even contracts that contain a provision specifying that it may only be modified in writing may be subsequently modified by oral agreement."); *Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, 500 ("A written construction contract may be modified by oral agreement and by the conduct of the parties, even when the contract provides that change orders must be in

writing."); *Monroe v. Physicians Behav. Hosp., LLC*, 49,248 (La. App. 2 Cir. 8/13/14), 147 So. 3d 787, 796 ("Even underlying contracts which contain provisions specifying that the contract may only be modified in writing may be subsequently modified by oral agreement.").

Second, in Aldridge's Rule 30(b)(6) deposition, its corporate representative testified that Vibratory Hammer 1 was exchanged for Vibratory Hammer 2 due to an "emergency"—Vibratory Hammer 1 was experiencing mechanical issues. (Aldridge Dep., Doc. 108-2 at 186-187.) Aldridge further testified that Vibratory Hammer 2 was being used to continue the same work, at the same job, at the same location, with the same crew, under the same work plan as Vibratory Hammer 1. (*Id*. at 184-186.)

Third, the signed Rental Agreement between Aldridge and APE provides that the Agreement was for the listed equipment "or, at the sole option of APE, equipment which is similar to the equipment described herein." (Doc. 37-3 at 2.) Given the testimony above, Vibratory Hammer 2 is similar equipment to Vibratory Hammer 1. (*See* Aldridge Dep., Doc. 108-2 at 184-187.) Accordingly, the original rental agreement as modified by the unsigned second rental agreement is a valid, enforceable contract that contains the onerous provisions at issue.

### B.  Workers' Compensation Immunity Waiver

The disputed facts concerning the existence of a contract do not end the inquiry. Aldridge contends that even if there is a valid contract, the rental agreement it executed with APE does not obligate Aldridge to indemnify, defend, and provide additional insurance. Thus, further analysis is warranted.

### 1. Conflicts of Law

The rental agreement provides that any legal dispute arising from the agreement shall be governed by Washington law. (Doc. 37-3 at 2.) As previously noted, because the Court has

diversity jurisdiction over this matter, the Court applies the choice of law principles of the forum state, in this case Louisiana. *Abraham v. State Farm Mutual Auto. Ins. Co.,* 465 F.3d 609, 610 (5th Cir. 2006) (citing *Klaxon,* 313 U.S. at 496). Louisiana's choice of law principles regarding contracts are contained in La. Civ. Code arts. 3537-3541. Louisiana law generally "allows parties to select the law that will determine the outcome of disputes arising from a contract." *Verdine v. Ensco Offshore Co.,* 255 F.3d 246, 250 (5th Cir. 2001) (citing La. Civ. Code art. 3540); *Chance v. Designer Wardrobe Trailers, Inc*., 2009 WL 799963, at *3 (E.D. La. Mar. 24, 2009).

"Louisiana allows parties to stipulate in their contracts which state's laws are to govern them. Such contractual stipulations are not honored, however, where there are legal or strong public policy considerations justifying the refusal to honor the contract as written." *Kirkland v. Deluxe Small Bus. Sales, Inc.*, 2016 WL 9402787, at *4 n.14 (M.D. La. July 27, 2016) (citing *NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir. 1985)); *Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.,* 669 F.2d 1049, 1058 (5th Cir. 1982) (internal citations and quotations omitted). The Agreement contains a valid Washington choice of law clause, and the parties do not dispute its applicability. Even if they disputed its applicability, neither party has pointed to any legal or strong public policy consideration militating against its enforcement. Therefore, the Court will apply Washington law.

### a.   Governing Washington Law

Under Washington law, an indemnity agreement is interpreted in accordance with the same rules governing other contracts. *Snohomish Cty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc*., 173 Wash. 2d 829, 835, 271 P.3d 850, 853 (2012) (citing *Jones v. Strom Constr. Co.,* 84 Wash. 2d 518, 520, 527 P.2d 1115 (1974)).

Although parties to a contract, such as a lease, may generally agree to limit liability for negligence, courts look with disfavor on such attempts to limit liability and will strictly construe these provisions against the party relying on them. *See Calkins v. Lorain Division of Koehring Co.*, 26 Wash. App. 206, 210 (1980) ("Ambiguous contracts are construed against the drafter ... and ambiguous indemnity contracts are construed against the indemnitee...."); *McDowell v. Austin Co.*, 105 Wash. 2d 48, 52 (1985) ("[P]ublic policy disfavors allowing an indemnitee to contract away liability resulting from its own negligence, and courts will enforce such agreements only if expressed in clear terms."); *Northwest Airlines v. Hughes Air Corp.*, 104 Wash. 2d 152, 155 (1985) ("Washington currently requires, as do some other states, that more specific language be used to evidence a clean and unequivocal intention to indemnify the indemnitee's own negligence.") (citations omitted). In other words, the drafter must use express language when shifting liability; general language exempting a party from a specific source of liability is not sufficient. *See PAR Elec. Contractors, Inc. v. BlueLine Rental LLC*, 2017 WL 374477, at *4 (E.D. Wash. Jan. 25, 2017); *McDowell*, 105 Wash. 2d at 52; *Calkins*, 26 Wash. App. at 210 ("A contract providing indemnity for concurrent negligence will be strictly construed, with any doubts resolved in favor of the indemnitor.").

The Washington Industrial Insurance Act, RCW 51.04.010, *et seq.,* grants employer's immunity from liability for workplace injuries sustained by their own employees. RCW 51.04.010. For public policy reasons, employers are generally barred from waiving this immunity. RCW 51.04.060; RCW 4.24.115(1)(a). A limited exception to this rule allows employers to indemnify third parties who become liable to their employees by virtue of the employer's negligence. *Brown v. Prime Constr. Co., Inc.,* 102 Wash. 2d 235, 238, 684 P.2d 73 (1984); RCW 4.24.115(1)(b). Because such agreements "run[ ] contrary to the foundation of the industrial insurance scheme,"

17

however, they are subject to heightened enforceability requirements. *Id.* at 239. To be enforceable under Washington law, this type of third-party indemnification agreement will only be enforced if it "clearly and specifically" waives the employer's immunity. *Id.* A "clear and specific" wavier may be found from (1) express language to the effect that the employer has waived the immunity granted to it under the workers compensation act, RCW Title 51; or (2) a provision "specifically stating that the [employer] assumes potential liability for actions brought by its own employees." *Id.* at 240. By statute, such an agreement must also have been "mutually negotiated by the parties" to be enforceable. RCW 4.24.115(1)(b).

The primary issue here is whether the indemnification provision in the parties' contract contains a "clear and specific" waiver of Aldridge's immunity under the Industrial Insurance Act. The Court repeats the operative provisions:

> 13. INDEMNIFICATION: The Customer hereby agrees to defend, indemnify and hold APE harmless from any claims, complaints, lawsuits, arbitration litigation, damages, losses, expenses, penalties, fines, liabilities, or obligations of any kind which relates to, arises out of, or is alleged to relate to or arise out of the Equipment, the use of the Equipment, the condition of the Equipment, any failure or alleged failure to warn, or any other matter that is in any way related directly or indirectly to this Agreement.
>
> 14. INSURANCE: The Customer agrees to maintain insurance which covers all liability arising from its business operations and any damage to the Equipment. The Customer's liability insurance shall have limits of at least $2,000,000 per occurrence and shall cover any liability for, injuries to individuals, and the Customer's defense and indemnity obligations under Section 12. The Customer's insurance covering any property damage to the Equipment shall be for replacement cost of the Equipment and no less than the value set forth on the front of this Agreement, APE, shall be named as an additional insured on the Customer's insurance policies. The Customer shall provide proof that it has obtained insurance that meets its obligations under this Section 13. The Customer waives all rights of subrogation that an insurer might have against APE under any such insurance policy unless such waiver voids the Customer's insurance.

(Doc. 37-3 at 2.)

18

**b.  No Waiver of Workers' Compensation Immunity**

The Court finds that the language above does not satisfy the "clear and specific" waiver requirement. As noted, an indemnification agreement can satisfy the "clear and specific" waiver requirement in one of two ways: (1) by expressly stating that the employer has waived its immunity under the workers compensation act; or (2) "by specifically stating that the [employer] assumes potential liability for actions brought by its own employees." *Brown,* 102 Wash. 2d at 239–40. In *Brown,* the indemnity language at issue provided that the third-party defendant and employer of the plaintiff agreed to:

> indemnify and save harmless the contractor [third-party plaintiff] ... from and against *any and all suits, claims* ... and damages *of whatsoever kind or nature* ... arising out of, in connection with, or incident to, the work of this subcontractor [employer]…

102 Wash. 2d at 237 (emphasis added). The *Brown* court ruled that this broad language failed to clearly express a specific intent of the employer to waive its RCW 51 immunity. *Id.* at 240.

Here, the indemnity provision in the Agreement provides that Aldridge agrees to:

> defend, indemnify and hold APE harmless from *any* claims, complaints, lawsuits, arbitration litigation, damages, losses, expenses, penalties, fines, liabilities, or obligations of any kind *which relates to, arises out of, or is alleged to relate to or arise out of the Equipment, the use of the Equipment, the condition of the Equipment, any failure or alleged failure to warn,* or any other matter that is in any way related directly or indirectly to this Agreement.

(Doc. 37-3 at 2 (emphasis added).) Like the provision in *Brown,* the Agreement does not constitute a specific waiver of employer immunity. The indemnification provision above does not specifically reference "RCW Title 51," nor does it state that Aldridge's obligation to indemnify will not be limited by any applicable "workers' compensation acts, disability benefit acts or other employee benefit acts." *Crop Prod. Servs., Inc. v. Narum Concrete Constr., Inc.*, 2013 WL 4759085, at *5 (E.D. Wash. Sept. 4, 2013).

The language in the Agreement also does not assume potential liability against Aldridge for actions brought by Aldridge employees. As Aldridge points out, the provision is very broad and does not specify that Aldridge will defend and indemnify APE or any other party and makes no reference as to who may potentially bring claims. This is insufficient under Washington jurisprudence. *Riggins v. Bechtel Power Corp.*, 44 Wash. App. 244, 255, 722 P.2d 819, 825 (1986) (finding that the plaintiff's employer did not waive its statutory tort immunity where the contract did not reference the workers compensation statute or specify that the employer assumed liability for all suits "brought by its employees."); *Waters v. Puget Sound Power & Light Co.*, 83 Wash. App. 407, 409, 924 P.2d 925, 926 (1996) (finding that the employer did not waive its tort immunity where the generic contractual language purported to indemnify a third party for "any and all claims", which was not "a specific expression of intent to waive employer immunity."); *see also Hatch v. City of Algona*, 140 Wash. App. 752, 760, 167 P.3d 1175, 1180 (2007) (indemnity agreement not enforceable because there was no language specifically waiving statutory tort immunity) (citing *Brown*).

Because the indemnity language does not explicitly waive employer immunity or assume liability for actions brought by Aldridge's employees, the indemnity provision does not constitute a waiver of employer immunity.

Further, since Aldridge does not owe APE any indemnification obligation because the provision is unenforceable under Washington law, Aldridge also has no duty to provide additional insurance coverage with regard to the indemnification provision in the Agreement.

**V.    Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 108) filed by Third-Party

Defendant, Aldridge Electric, Inc. is **GRANTED**.

Signed in Baton Rouge, Louisiana, on September 21, 2021.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**