UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**HARRIS EUGENE URDA, ET AL**

**VERSUS**

**VALMONT INDUSTRIES, INC., ET AL.**

**CIVIL ACTION**

**NO. 3:18-CV-1044-JWD-EWD**

**RULING ON DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

Before the Court is *Defendants' Motion to Exclude Expert Testimony Pursuant to Federal Rule of Evidence 702* (Doc. 131) ("*Motion*") brought by defendants Valmont Industries, Inc. and Valmont Newmark, Inc. ("Defendants" or "Valmont"). The *Motion* is opposed by plaintiffs Harris Eugene Urda and Rachel Urda (collectively, "Plaintiffs"). (Doc. 139.) No reply brief was filed. The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is denied.

**I.     BACKGROUND**

According to Plaintiffs, Harris Eugene Urda ("Urda") was seriously injured on January 4, 2018 while working for Aldridge Electric, Inc. at a construction site in Plaquemine, Louisiana. (Doc. 64 at 2.) At the time of the injury,

> [Urda] was operating a crane . . . which was involved in placing utility power poles in the ground by a vibratory hammer used in conjunction with the crane. When the hammering process began, the ears of the pole fell from the teeth of the hammer and struck the crane and . . . Urda, causing his injuries.

(Doc. 75 at 3, ¶ 9.)

1

Valmont was among the defendants sued. Plaintiffs charge that Valmont "provided power poles with galvanized ears. The galvanized material caused the connection between the ears and the teeth of the vibratory hammer to be compromised and caused the pole to fall." (*Id*. at ¶ 10.)

Plaintiffs "do not assert products liability claims" but, rather, "present negligence claims only." (Doc. 139 at 3.)

Valmont denies liability, (Doc. 47 at 5; Doc. 79), and states that "[t]he issues of what caused the caisson to fall, what could have been done to prevent the fall, and which parties were responsible and in what proportions, are hotly contested," (Doc. 131 at 4).

In support of their negligence claims against Valmont, Plaintiffs offer the opinions of William H. Pierce, a mechanical engineer who was retained by Plaintiffs to "reconstruct the accident" and "determine the cause of the incident." (Doc. 139 at 7.) As it pertains to Valmont, Pierce was asked specially to determine:

> 1. Whether or not Valmont, as the manufacturer and supplier of the subject pole base, supplied the pole base in a reasonably safe and proper manner in accordance with safety engineering principles.
>
> 2. ***
>
> 3. The probable cause of the accident.
>
> 4. Whether or not the accident could have been prevented had Valmont supplied the pole base to Aldridge in a reasonably safe and proper manner. . . .

(Doc. 131-5 at 3.)

As to Valmont, Pierce concludes:

> 1. During the accident, the subject caisson's tabs separated from the APE vibratory hammer clamp as a result of Valmont's failure to mask the lift tabs during the caisson galvanization process.

2. Valmont's lack of structured oversight/quality control and inter-division communication during the manufacturing process of the subject caisson resulted in the subject batch of caisson's [sic] shipped to the Entergy work site exposing Aldridge installation personnel to the hazard that Entergy attempted to eliminate through design.

3. Had Valmont had a properly structured quality control and inter-division communication pipelines [sic] during the manufacturing process, the subject caisson's lift tabs would not have been galvanized and the accident would have been prevented.

(Doc. 131-5 at 24–25.)

## II.  SUMMARY OF PARTIES' ARGUMENTS

Valmont argues that Pierce "is not qualified . . . to provide the opinions on the subject matter for which he is providing opinions." (Doc. 131 at 1.) Further, since "his opinions are not supported by any analysis or calculations," they "are not in compliance with the evidentiary standards" required by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). (*Id*. at 1, 8–11.) Finally, Valmont maintains that Pierce rests his opinions on "*ipse dixit* and unwritten 'back-of-the-envelope' calculations" which provide an additional ground for excluding his testimony. (*Id.* at 11–12.)

With respect to qualifications, while Valmont concedes that Pierce may be qualified generally in mechanical engineering and has had experience with other areas of accident reconstruction, his lack of experience with "cranes, the operation of cranes or vibratory hammers, or the driving of piles or caissons" renders him unqualified to testify regarding the issues in this case. (*Id.* at 6; *id*. at 6–8.) Valmont charges that his opinions are "based on conjecture", (*id.* at 8), and are not grounded on analysis or calculations, (*id*. at 8–10 (quoting Pierce's testimony regarding safety manuals and his lack of understanding of how a grapple crane is used to stabilize the caisson).) Finally, Valmont points the Court to Pierce's testimony where he performed but did not

record and cannot reproduce "back-of-the-envelope" calculations thus rendering his opinions *ipse dixit*. (*Id*. at 11–12.)

Plaintiffs respond that Pierce is highly qualified to provide the opinions he has given and, while he has limited experience with the specific equipment involved in this accident, "[t]he list of products he has investigated during his career includes heavy industrial equipment such as cranes, forklifts, and other lifting devices." (Doc. 139 at 8 (citing Pierce Aff., Doc. 139-1 at ¶ 4).) Furthermore, he utilizes in every case the same mechanical engineering and physics principles, "kinematics (the study of motion) and dynamics (the causes of motion)" and "the engineering hierarchy" to perform a "failure mode evaluation", i.e., to identify failure modes and the causes of the accidents he investigates, regardless of the particular equipment involved. (*Id.* (citing Doc. 139-1 at ¶ 8–10).) He also utilized generally accepted safety engineering principles. (*Id.*)

As to Pierce's methodology and the sufficiency of the foundation for his opinions, Plaintiffs maintain that Pierce "followed the methodology in this case that he uses in every investigation" which is set out in Pierce's original report and affidavit. (*Id.*) Plaintiffs hotly dispute the charge that Pierce's opinions are not supported by "any analysis or calculation" since he reviewed between 5,000 and 10,000 pages of materials, produced a detailed report and supplement, provided an affidavit further explaining his work in the case, and gave a deposition approximately 200 pages in length with 40 exhibits. (*Id*. at 18.) Finally, Plaintiffs direct the Court to Pierce's testimony and his explanation of the "back-of-the-envelope calculations" as well as his reliance on "calculations made by other sources of information." (*Id*. at 18.)

### III. STANDARD

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997) (holding that appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

Defendants' motion is a *Daubert* challenge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *See Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court

must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins*, 121 F.3d at 988–89 (internal citations omitted).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

Cases following *Daubert* have expanded upon its original factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee note to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Group*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

## IV.  DISCUSSION

### A. Qualifications

Federal Rule of Evidence 702 requires that an expert be properly qualified; generally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S.*

7

*Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds*; *see also Sexton v. Exxon Mobil Corp.*, 484 F. Supp. 3d 321, 333–34 (M.D. La. 2020).

Pierce's credentials are set out in his resume, (Doc. 131-1), and, in more detail, in his affidavit, (Doc. 139-1). In summary, he has a BS degree in mechanical engineering from Purdue University, (Doc. 131-1 at 1; Doc. 139-1 at 1), and is a licensed professional engineer in Texas and California, (Doc. 139-1 at 1). He is a Board-Certified Diplomate in Forensic Engineering by the National Academy of Forensic Engineers. (*Id.*) His resume lists nine peer reviewed publications. (Doc. 131-1 at 2.)

Since 2009, his consulting work has "focused on accident reconstruction, safety engineering, and forensic investigations." (Doc. 139-1 at ¶ 4.) He has "investigated several hundred claims that applied accident reconstruction, safety engineering principles or both." (*Id.*) Among the kinds of equipment involved in these claims are industrial cranes, articulated boom lifts, rotator cranes and other kinds of lifting equipment. (*Id.*)

Valmont complains that Pierce has not published on the subject of cranes and vibratory hammers nor has he attended technical conferences or seminars on these subjects or on pile driving or caisson driving. (Doc. 131 at 6–7 (citing Doc. 131-1).) None of the cases where he was previously consulted involved vibratory hammers of pile or caisson driving. (*Id.* at 7–8.)

Plaintiffs respond that Pierce's experience includes "heavy industrial equipment such as cranes, forklifts, and other lifting devices" and that the mechanical engineering and safety engineering principles utilized by Pierce apply equally to various kinds of equipment and accidents. (Doc. 139 at 8.)

The Court has carefully reviewed Pierce's credentials and finds him to be well qualified to opine on the subjects set out in his reports and affidavit. In any event, "Rule 702 does not mandate

that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

As to Valmont's complaint that Pierce has never been consulted in a case with the precise equipment involved in this accident, it is clear that he has consulted on similar pieces of equipment including industrial cranes, articulated boom lifts, rotator cranes and other kinds of lifting equipment, and the Court finds that Pierce's education and experience qualify him to testify about the matters about which he has given his opinions in this case.

In addition, the Court agrees with Pierce that:

> [M]echanical engineers receive education and training on the fundamentals of physics, and they must understand the mechanical components of larger systems. All products obey the same laws of physics, and the principles of safety engineering apply to all products ranging from consumer products, medical equipment, building construction, vehicles, and heavy industrial equipment.

(Doc. 139-1 at ¶ 5.) This doesn't mean that a well-qualified mechanical engineer would necessarily be qualified to opine about every aspect of every conceivable product, but the fact that Pierce has not previously been involved with the precise equipment involved in this accident does not, by itself, disqualify him. "[C]ourts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be 'qualified' as an expert on that issue." *Sexton,* 484 F. Supp. 3d at 334 (citing *BP Expl. & Prod., Inc. v. Callidus Techs., L.L.C.*, 02-2318, 2003 WL 26118097, at *1–2 (E.D. La. Apr. 8, 2003)).

### B. Methodology and Foundation

The Court has carefully reviewed Pierce's expert report and appendices, (Doc. 131-5), and his affidavit and attachments, (Doc. 139-1), and it is clear to the Court that Valmont's motion is without merit. As to foundation, Pierce lists the materials he was provided and reviewed which

include seven depositions and hundreds of pages of documents related to the accident produced in discovery. (Doc. 131-5 at 26–27.) In addition, Pierce obtained and reviewed an additional 15 items including various texts and standards related to the issues he was considering. (*Id*. at 28.) Pierce specifically refers to the sources of the safety engineering principles he relied on, pointing to four texts and three sets of national or international standards. (*Id*. at 21 nn.5–11.)

Valmont's allegation that Pierce's opinions are "based on conjecture," (Doc. 131 at 8), are "not grounded on analysis or calculations," and are *ipse dixit*, (*id.* at 8–10), are similarly meritless as belied by Pierce's extensive analysis set out in his 25-page report, (Doc. 131-5). Furthermore, in his affidavit, Pierce details his methodology as it pertains to reaching his conclusions on the pole base, (Doc. 139-1 at ¶¶ 12-14), on the identification and mitigation of hazards, (*id*. at ¶¶ 15-21), and on the vibratory hammer and crane, (*id*. at ¶¶ 22-24). Contradicting Valmont's charge that he did no calculations or only "back of the envelope" calculations to reach *ipse dixit* conclusions, Pierce outlines the calculations he made in connection with "reconstructing the geometry of the incident scene," (*id*. at ¶¶ 25-26), and regarding coefficient of friction, integral to his conclusion to the role of the galvanized drive ears in the accident, (*id*. at ¶¶ 27-30.)

Of course, the Court takes no position on the soundness of Pierce's opinions. The question for the Court is not whether the expert's conclusions are correct but whether the expert used a valid methodology with a sufficient foundation. Some of Valmont's arguments are aimed at Pierce's specific conclusions. (*See, e.g.*, Doc. 131 at 8–10). These objections go to the weight, not admissibility, of the evidence and are best tested at trial by vigorous cross examination and/or the testimony of disagreeing experts.

## V. CONCLUSION

For the foregoing reasons, *Defendants' Motion to Exclude Expert Testimony Pursuant to Federal Rule of Evidence 702* (Doc. 131) is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 21, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**